## HEALTH OCCUPATIONS

**PHYSICAL THERAPISTS – ACUPUNCTURISTS – PHYSICAL THERAPY BOARD HAS AUTHORITY TO DETERMINE BY REGULATION WHETHER "DRY NEEDLING" IS WITHIN THE SCOPE OF PRACTICE OF PHYSICAL THERAPY**

August 17, 2010

*Steven Kaufman, L.Ac., Chair*
*Board of Acupuncture*
*Maryland Department of Health*
  *and Mental Hygiene*

On behalf of the State Acupuncture Board, your predecessor asked for our opinion concerning a procedure known as "dry needling" that is performed by some physical therapists. Dry needling involves the insertion of acupuncture needles into the skin at certain locations for a therapeutic effect – usually relief of pain. He asked whether the insertion of acupuncture needles in a patient falls within the definition of the practice of physical therapy in Maryland and whether it is appropriate for the Board of Physical Therapy Examiners ("Physical Therapy Board") to include it within the scope of practice of physical therapy without legislation on the subject. He stated that the Acupuncture Board believes that the authority to insert needles is reserved, under the Maryland Acupuncture Act, to licensed acupuncturists and certain health care professionals specifically exempted from its licensing requirements.

The authority to use acupuncture needles for therapeutic purposes is not necessarily reserved exclusively to licensed acupuncturists or those specifically exempted from the licensing requirement for acupuncturists. State law recognizes that the scope of practice of health care professions may overlap and confers extensive discretion on licensing boards to define the scope of a profession within statutory limits. In our opinion, the Physical Therapy Board may determine that dry needling is within the scope of practice of physical therapy if it conducts rulemaking under the State Administrative Procedure Act and adopts a regulation that relates dry needling to the statutory definition of practice of physical therapy. Any such process should consider standards for education and training that presumably would be at least as strict as those set

by the Legislature for physicians who use acupuncture needles for similar therapeutic purposes.

**I**

**Background**

### *A.   Dry Needling*

"Dry needling" refers to the insertion of one or more solid needles into the skin for a therapeutic purpose without injecting or withdrawing any fluids.  There apparently are several variants of the technique, including "trigger point dry needling" (also called intramuscular stimulation or intramuscular manual therapy by some), in which an acupuncture needle is inserted into the skin and muscle for the treatment of pain.  J. Dommerholt, et al., *Trigger Point Dry Needling*, 14:4 Journal of Manual and Manipulative Therapy E70 (2006).

Dry needling is controversial.  Few physical therapists have been trained in it or use the technique.  *Id.*  Physical therapy boards in at least half a dozen states and several countries have embraced it as within the scope of practice of physical therapy while others have declared it to be outside the scope of practice.  *Id.; see also* Federation of State Boards of Physical Therapy, *Intramuscular Manual Therapy (Dry Needling) – Resource Paper* (March 8, 2010) at p. 6; Memorandum of Debi Mitchell, Practices Issues Coordinator, Physical Therapy Board of California (December 8, 2006) (stating that physical therapists in California are not authorized to perform dry needling).[1]

### *B.   Dry Needling in Maryland*

In Maryland, the Physical Therapy Board and the Acupuncture Board have staked out contrary positions concerning regulation of dry needling.

---

[1] The Acupuncture Board and Maryland Acupuncture Society provided copies of minutes of meetings of other state physical therapy boards in which those boards expressed the view that dry needling is outside the scope of practice of physical therapy. *See, e.g.,* Minutes of Delaware Examining Board of Physical Therapists and Athletic Trainers (October 27, 2009) at p. 6; Minutes of Idaho State Board of Physical Therapy (May 4, 2007) at p. 2; Minutes of New Jersey State Board of Physical Therapy Examiners (November 28, 2006) at p. 3.

*Physical Therapy Board*

In 1997, the Physical Therapy Board informally advised one of its licensees that it was of the opinion that "there is nothing in the Physical Therapy Statute ... to preclude a physical therapist from performing intramuscular stimulation (IMS) by dry needling if adequate training and competency can be demonstrated.... The Board feels that physical therapists, especially those with manual therapy skills, are qualified to perform dry needling." Letter of Charles M. Dilla, P.T., Chairman of the Maryland Board of Physical Therapy Examiners, to Jan Dommerholt, MPS, P.T. (September 18, 1997). The Physical Therapy Board has not adopted any regulations that address dry needling or that specify any particular training or education as a prerequisite to using the technique.

After the Acupuncture Board requested this opinion, the Physical Therapy Board provided us with various materials to support its position that dry needling, as well as certain other invasive procedures,[2] are within the scope of practice of physical therapy. The Physical Therapy Board defines dry needling as "a technique used to treat myofascial [muscle] pain that uses a dry needle, without medication, that is inserted into a trigger point with the goal of releasing/inactivating the trigger points and relieving pain." Federation of State Boards of Physical Therapy, *Intramuscular Manual Therapy (Dry Needling) – Resource Paper* (March 8, 2010) at p. 3.[3] The Physical Therapy Board contrasts dry needling, which it argues is based on modern western ideas concerning anatomy and neurology, to acupuncture, which it characterizes as a form of health care based on a theory derived from Chinese medicine. The Physical Therapy Board also asserts that use of the technique by physical therapists is limited by virtue of the Board's regulation providing that a "physical therapist shall work

---

[2] Among the other invasive procedures described in those materials were electromyography, wound debridement, staple removal, and other procedures. This opinion addresses only dry needling.

[3] We also received materials from the Maryland Chiropractic Association supporting the conclusion that dry needling is within the scope of practice of physical therapy. The State Board of Chiropractic and Massage Therapy Examiners may authorize individuals to practice chiropractic with a right to practice physical therapy, if the certain criteria are met. Annotated Code of Maryland, Health Occupations Article, §§3-101(g), 3-301, 3-302(d), 3-303, 3-304(e)(2).

within the physical therapist's competency in physical therapy evaluation and treatment." COMAR 10.38.03.02A(2)(f).

*Acupuncture Board*

The State Acupuncture Board has a different view. It reports that it recently received a complaint that an acupuncturist was performing a physical therapy technique – *i.e.*, dry needling. The Acupuncture Board determined that dry needling is within the scope of practice of acupuncture and closed its investigation. In the letter requesting this opinion, the Acupuncture Board stated that it believes not only that dry needling is within the scope of practice of acupuncture, but also that the authority to insert needles in skin is reserved to licensed acupuncturists and to those health care professionals exempted by the acupuncture statute from the licensing requirement – physicians, dentists, and veterinarians.[4] Some of the materials submitted to us maintain that the theory underlying dry needling is identical to a particular branch of Chinese medicine called Ashi and that dry needling is therefore indistinguishable from acupuncture.

We need not resolve the academic debate whether acupuncture is limited to the application of Chinese medical theories or whether the theory underlying dry needling can be traced to a branch of Chinese medicine. As indicated in the next section, the General Assembly has defined acupuncture, for purposes of Maryland law, both with and without reference to Chinese medicine. More importantly, the scope of practice of physical therapy and the scope of practice of acupuncture are not necessarily mutually exclusive.

## C.    *Regulation of Use of Acupuncture Needles in Maryland*

There appears to be no dispute that dry needling involves the same type of needles used by acupuncturists and that the technique bears at least a superficial similarity to acupuncture. The use of acupuncture needles for therapeutic purposes has been a key part of traditional Chinese medicine for millennia. 80 *Opinions of the Attorney General* 180 (1995). It was brought to the United States by Chinese immigrants during the 19th century, but was not practiced

---

[4] We also received materials from the Maryland Acupuncture Society and nearly identical letters from approximately 30 licensed acupuncturists arguing that there is no substantive difference between acupuncture and dry needling.

outside the Chinese community until the early 1970s.  *Id.*  At that time, the State began to regulate the use of acupuncture needles.

### 1.    1970s:  Regulation of Acupuncture as Practice of Medicine

In late 1973 and again in early 1974, Attorney General Burch advised that the practice of acupuncture was the practice of medicine and therefore could be performed only by a licensed physician.  59 *Opinions of the Attorney General* 3 (1974); Advice Letter to Daniel T. Doherty, Chairman, Workmen's Compensation Commission (November 28, 1973).  That opinion also stated that the Board of Medical Examiners could adopt a regulation allowing physicians to delegate limited, specific manual procedures to unlicensed assistants in connection with acupuncture.  Shortly thereafter, the Legislature confirmed that advice in legislation. Chapter 530, Laws of Maryland 1974.  That law did not define acupuncture, but simply included acupuncture within the scope of practice of medicine and authorized non-physicians to perform acupuncture only under the supervision of a licensed physician.

### 2.    1982:  Definition of "Acupuncture" Performed by Physicians

In 1982, the General Assembly amended the licensing statute for physicians to provide for the registration of individuals whom the Board of Medical Examiners found to have adequate education, training, or experience in acupuncture.  The statute authorized registered practitioners to perform acupuncture under the general supervision of physicians who had themselves completed special training in acupuncture. Chapter 644, Laws of Maryland 1982. That law also provided, for the first time, a definition of acupuncture.  It defined "perform acupuncture" to mean:

> to stimulate a certain point or points on or near the surface of the human body by the insertion of needles to prevent or modify the perception of pain or to normalize physiological functions, including pain control, for the treatment of ailments or conditions of the body.

Annotated Code of Maryland, Health Occupations Article ("HO"), §14-101(h) (1981 & 1982 Supp.).  As is evident, this definition would include the current practice of dry needling.  This definition

does not refer to any particular philosophy that informs the use of the needles.

### 3. 1994: Maryland Acupuncture Act

In 1994, the General Assembly created the State Acupuncture Board and began to regulate acupuncturists as a separate health care profession. Chapter 620, Laws of Maryland 1994, *codified at* HO §1A-101 *et seq*. In the definition of "acupuncture" in the licensing statute, the General Assembly for the first time made reference to a particular philosophy guiding the use of the needles by that profession. In particular, it defined acupuncture as a form of health care based on "a theory of energetic physiology" involving the "use of oriental medical therapies."[5] Physicians, dentists, and veterinarians were specifically excluded from regulation under the State Acupuncture Law. HO §1A-102.[6]

---

[5] The Maryland Acupuncture Act defines acupuncture as "a form of health care, based on a theory of energetic physiology, that describes the interrelationship of the body organs or functions with an associated point or combination of points." HO §1A-101(b). The statute defines the practice of acupuncture as:

> (1) ... the use of *oriental medical therapies* for the purpose of normalizing energetic physiological functions including pain control, and for the promotion, maintenance, and restoration of health.
>
> (2)"Practice acupuncture " includes:
>
> (i) Stimulation of points of the body by the insertion of acupuncture needles;
>
> (ii) The application of moxibustion; and
>
> (iii) Manual, mechanical, thermal, or electrical therapies only when performed *in accordance with the principles of oriental acupuncture medical theories*.

HO §1A-101(f) (emphasis added). In 80 *Opinions of the Attorney General* 180 (1995), Attorney General Curran relied in part on the references to "oriental medical therapies" in concluding that the Acupuncture Act authorized licensed acupuncturists to treat animals.

[6] In addition, several other categories of individuals were excluded

(continued...)

The 1994 law retained the provision in the physician licensing statute that required registration of physicians who perform acupuncture. The definition of "perform acupuncture" in the Medical Practice Act has remained unchanged since 1982. In particular, that definition refers generally to the insertion of needles "to prevent or modify the perception of pain or to normalize physiological functions" without reference to any particular theory of medicine. HO §14-101(i).[7] In order to register to "perform acupuncture," a physician must complete at least 200 hours of instruction in acupuncture and satisfy other conditions set by the Physicians'Board. HO §14-504(c).

## II

### Scope of Practice of a Health Care Profession

Disputes over the boundaries of the scope of practice of licensed occupations are not uncommon. On occasion, this Office has been asked to provide guidance on how to navigate those boundaries. *See* 88 *Opinions of the Attorney General* 182 (2003) (professional engineers and private detectives); 80 *Opinions of the Attorney General* 180 (1995) (acupuncturists and veterinarians); 76 *Opinions of the Attorney General* 3 (1991) (physical therapists and chiropractors); 73 *Opinions of the Attorney General* 208 (1988) (clinical social workers and physicians); 71 *Opinions of the Attorney General* 149 (1986) (whether chiropractors may use certain laboratory diagnostic techniques).

It is frequently the case that the scopes of practice of two occupations overlap. "[T]here is nothing intrinsically amiss about legislative authorization for two separate health occupations to perform some of the same acts." 76 *Opinions of the Attorney General* at 13; *see also* 80 *Opinions of the Attorney General* at 181 ("Depending on the statutory scheme, the same activities could fall within the scope of practice of two separate health occupations.").

---

[6] (...continued)
from the licensing requirements – *e.g.,* federal employees practicing acupuncture within the scope of their employment, students, visiting teachers. *See* HO §1A-301(b).

[7] Effective October 1, 2010, this definition will be recodified as HO §14-101(k).

The scopes of practice of regulated health care professions are set forth in the definitional sections of the various titles of the Health Occupations Article of the Annotated Code of Maryland. The licensing statutes presume that there are areas of overlap among the scopes of practice of various health care professions. Thus, each licensing statute provides that it "does not limit the right of an individual to practice a health care occupation that the individual is authorized to practice under the [Health Occupations Article]." *See, e.g.,* HO §1A-102(a) (Maryland Acupuncture Act); HO §13-102(1) (Maryland Physical Therapy Act); *see also* 76 *Opinions of the Attorney General* at 6. In providing for overlapping scopes of practice for various health care professions, the General Assembly has fostered consumer choice in the selection of treatment and practitioner. 80 *Opinions of the Attorney General* at 182 (concluding that both acupuncturists and veterinarians could perform acupuncture on animals within the scope of their respective practices).

Thus, as appropriately phrased in your predecessor's letter, the critical question for resolving this dispute is whether dry needling falls within the scope of practice of physical therapy, regardless of whether it would also fall within the scope of practice of acupuncture.

In answering such a question we first look to whether the General Assembly has clearly resolved the issue. Has the General Assembly, in the Physical Therapy Act, clearly included dry needling within the scope of practice of physical therapy? If the statutory language does not clearly settle the issue, then we must assess whether the licensing board has sufficient authority to find that the technique is within the scope of practice of the profession it regulates. In other words, would the Physical Therapy Board be acting within its statutory authority if it adopted a regulation allowing its licensees to perform the dry needling? *See* 76 *Opinions of the Attorney General* at 8-11.

If a licensing board has authority to declare a particular technique to be within the scope of practice of its profession, it can exercise that authority only in certain ways. Such a determination would be without legal effect if the board does not follow the rulemaking or declaratory ruling procedures of the Administrative Procedure Act. 76 *Opinions of the Attorney General* at 6-7 (Physical Therapy Board's statement that certain procedures were within the scope of practice of physical therapy was without legal effect as the board did not follow APA procedures in reaching that conclusion).

## III

### Scope of Practice of Physical Therapy

*A.* *Statute*

The Maryland Physical Therapy Act sets forth the scope of practice of physical therapy as follows:

(1) "Practice physical therapy" means to practice the health specialty concerned with:

(i) The prevention of disability in patients or clients; and

(ii) The physical rehabilitation of patients or clients with a congenital or acquired disability.

(2) "Practice physical therapy" includes:

(i) Performing an evaluation of the physical therapy needs of patients or clients;

(ii) Performing and interpreting tests and measurements of neuromuscular and musculoskeletal functions to aid treatment;

(iii) Planning treatment programs that are based on test findings; and

(iv) Except as provided in paragraph (3) of this subsection, administering treatment with therapeutic exercise, therapeutic massage, mechanical devices, or therapeutic agents that use the physical, chemical, or other properties of air, water, electricity, sound, or radiant energy.

(3) "Practice physical therapy" does not include using:

(i) X-rays;

(ii)     Radioactive substances;

(iii)    Electricity for cauterization or surgery.

HO §13-101(i). The Physical Therapy Board is authorized to adopt regulations to carry out its licensing statute. HO §13-206(a)(1). The Board thus has authority to adopt legislative rules – *i.e.*, regulations that have binding effect – on scope of practice matters. 76 *Opinions of the Attorney* General at 7; 75 *Opinions of the Attorney General* 37, 47-49 (1990).[8] Such rules must, of course, be consistent with the statute. *Fogle v. H&G Restaurant, Inc.*, 337 Md. 441, 453, 654 A.2d 449 (1995).

As is evident, the Physical Therapy Act makes no specific mention of "dry needling," "trigger points," or any other use of needles. On the other hand, treatment by needles is not explicitly excluded from the statute either, as is the use of x-rays. The various methods of administering treatment that are explicitly authorized in the statute appear to be unrelated to dry needling, unless acupuncture needles would be considered "mechanical devices." Thus, the statute itself does not clearly answer the question whether dry needling is within the scope of practice of physical therapy.

Whether dry needling is within the scope of physical therapy therefore depends on whether the Physical Therapy Board has authority to adopt a regulation that finds acupuncture needles to be a "mechanical device" for purposes of this statute.

### B.     Whether the Term "Mechanical Device" Could Include Acupuncture Needles

The reference to the use of "mechanical devices" by physical therapists has been a part of the law since the State first regulated physical therapists in 1947. *See* Chapter 906, Laws of Maryland 1947. Then, as now, the statute defined physical therapy to include treatment of injuries or disabilities by a variety of means, including exercise, massage, heat, cold, air, and light, among other things. There is no legislative history that sheds light on the range of implements covered by the phrase "mechanical devices." And we

---

[8] The Act forbids the practice of physical therapy without a license from the Physical Therapy Board or other authorization by law. HO §§13-301(a), 13-401(a).

have not found a judicial construction of the phrase. But it seems fair to conclude that, in using general terms like "exercise," "heat," "cold," and "mechanical device," the General Assembly did not intend to catalog each particular technique or limit the practice of physical therapy to the particular devices in existence in 1947. The general phrase "mechanical device" could encompass new devices that might be developed for physical therapists to administer treatment. In our view, the General Assembly intended to give the Physical Therapy Board substantial discretion to recognize new mechanical devices that might be employed in the practice of physical therapy.

The phrase "mechanical device"appears susceptible to a broad reading. A widely used dictionary defines "mechanical" as "of or relating to machines or tools" and "device" as "something constructed for a particular purpose." Webster's New College Dictionary (1995) at pp. 310, 679. In other words, in this context a mechanical device could be any tool designed for purposes related to physical therapy – *i.e.,* the prevention of disability or the physical rehabilitation of individuals with congenital or acquired disabilities.

Acupuncture needles have an ancient lineage in other parts of the world. But their use among the general population in Maryland for therapeutic purposes is relatively recent. As best we can tell from the materials available to us, the practice of dry needling as a form of therapy supposedly distinct from acupuncture did not appear until the 1970s. Hobbs, *Dry Needling and Acupuncture: Emerging Professional Issues*, Qi-Unity Report (September/October 2007). It apparently first came to the attention of the Physical Therapy Board in the mid-1990s. In our view, the Physical Therapy Board has discretion to determine by regulation whether acupuncture needles are a mechanical device for purposes of the Physical Therapy Act.

## C. *Process*

The Physical Therapy Board's informal statement that dry needling is consistent with the practice of physical therapy does not carry the force of law, as it is not a regulation adopted pursuant to the State Administrative Procedure Act, Annotated Code of Maryland, State Government Article, §10-101 *et seq.* It thus has no legal effect. *See* 76 *Opinions of the Attorney General* at 6-7 (Physical Therapy Board statement concerning scope of practice that was not incorporated in a regulation was without legal effect); 80 *Opinions of the Attorney* General at 185-86 (Acupuncture Board's

statement concerning scope of practice was ineffective legally because it had not been adopted as a regulation). In order to adopt a policy concerning dry needling that has legal effect, the Physical Therapy Board must undertake a rulemaking process that gives fair consideration to the objections to the use of acupuncture needles by physical therapists – objections that apparently have led a number of state physical therapy boards to find dry needling to be outside the scope of practice of physical therapy. In a previous opinion, Attorney General Curran outlined the type of inquiry the Physical Therapy Board must undertake:

> We suppose that, for example, the Physical Therapy Board would need to consider whether the procedure is akin to those for which physical therapists are trained; whether the procedure, if misapplied, entails an unusual risk of injury; and whether special diagnostic safeguards beyond those used by physical therapists are needed. We do not pretend to know whether these are the only questions, or even exactly the right ones to ask. Our point is that experts in physical therapy, not lawyers, are the people to answer them, through a procedure that allows all pertinent material to be considered. The purpose of the rulemaking would be to enable the Physical Therapy Board to learn and evaluate the legislative facts necessary to a sound decision.

76 *Opinions of the Attorney General* at 14 (footnote omitted). Moreover, as part of its process the Physical Therapy Board cannot ignore that, beginning 35 years ago, the Legislature has closely regulated the use of acupuncture needles in several respects under the rubric of "acupuncture," defined in at least two ways. If, after conducting a rulemaking process, the Physical Therapy Board finds that an acupuncture needle is a "mechanical device" and that dry needling is within the scope of practice of physical therapy, it should also define the standards for the use of dry needling, including standards for the education and training of physical therapists who engage in the practice.

In developing any such standards, the Physical Therapy Board should consider the standards the Legislature has established for physicians who "perform acupuncture." The practice of dry

needling, as described in the materials provided to us, appears to be indistinguishable from the definition of "perform acupuncture" in the Maryland Medical Practice Act. A physician who performed dry needling would be stimulating certain points near the surface of a person's body "by the insertion of needles to prevent or modify the perception of pain or to normalize physiological functions, including pain control, for the treatment of ailments or conditions of the body." Such a physician would, in the words of the Maryland Medical Practice Act, "perform acupuncture." HO §14-101(i). Under the Medical Practice Act, a physician must obtain at least 200 hours of instruction and meet other conditions set by the State Board of Physicians in order to use acupuncture needles in that way. HO §14-504.

It seems very unlikely that the General Assembly would intend that physicians satisfy such education requirements and specially register with their own licensing board in order to insert "needles to prevent or modify the perception of pain or to normalize physiological functions," but permit physical therapists to perform the same technique without any special educational requirements or oversight. Given that the Legislature has placed specific limitations on a physician's use of acupuncture needles in the Medical Practice Act, any rulemaking process adopted by the Physical Therapy Board would presumably need to consider standards and restrictions at least as stringent as those imposed on physicians.

**IV**

**Conclusion**

The authority to use acupuncture needles for therapeutic purposes is not necessarily reserved exclusively to licensed acupuncturists or those specifically exempted from the licensing requirement for acupuncturists. State law recognizes that the scope of practice of health care professions may overlap and confers extensive discretion on licensing boards to define the scope of a profession within statutory limits. In our opinion, the Physical Therapy Board may determine that dry needling is within the scope of practice of physical therapy if it conducts rulemaking under the State Administrative Procedure Act and adopts a regulation that relates dry needling to the statutory definition of the practice of physical therapy. Any such process should consider standards for education and training that presumably would be at least as strict as

those set by the Legislature for physicians who use acupuncture needles for similar therapeutic purposes.


Douglas F. Gansler
*Attorney General*

Robert N. McDonald
*Chief Counsel*
  *Opinions and Advice*